UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CRICKET COMMUNICATIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:13-1448 |
| ZAM, LLC, MOHAMMED A. RIHAN, and REHAM ABUHELAL | ) ) ) ) |
| Defendants. | ) ) |

## TEMPORARY RESTRAINING ORDER

This matter is before the Court upon Cricket Communications, Inc.'s Motion for Temporary Restraining Order. The Court, having considered the motion, the memorandum in support thereof, Cricket's Verified Complaint, the declarations of Chris Constantinides, Michael McCutcheon, and Larry Smith, the entire record herein, and being otherwise sufficiently advised hereby finds as follows:

1. This is an action for a temporary restraining order, preliminary injunction, and permanent injunction to prevent Defendants Zam, LLC, Mohammed Rihan, and Reham Abuhelal; their owners, shareholders, members, officers, partners, and directors ("Affiliated Persons") and any entity in which an Affiliated Person owns an interest ("Affiliated Entity"); their principals, officers, directors, employees, agents, and any successor entity; and all persons acting in concert with or in active participation with them from selling or otherwise disposing of Cricket devices, from misappropriating proceeds from the sale of the devices, and from infringing upon Cricket's trademark and service mark in violation of Sections 32(1) and 43(a) of the Lanham Act of 1946, as amended ("Lanham Act"), 15 U.S.C. §§ 1114(1) and 1125(a).

2. Cricket also seeks a temporary restraining order, preliminary injunction, and permanent injunction against Defendants enjoining them from violating the Amended and Restated Dealer Agreement[1] between Zam and Cricket, in which Zam agreed, among other things, that it would not compete with Cricket or solicit, divert, or attempt to divert Cricket's customers for a period of six months following termination of the Dealer Agreement.

3. During the term of the agreement, Zam operated four Cricket premier stores in the Dayton area:

|   | ADDRESS | CITY | STATE | ZIP |
|---|---------|------|-------|-----|
| 1 | 1744 N. Gettysburg Ave. ("Gettysburg Store") | Dayton | OH | 45417 |
| 2 | 3980 S. Dixie Hwy. ("Dixie Highway Store") | Dayton | OH | 45439 |
| 3 | 5001 Brandt Pike ("Brandt Pike Store") | Dayton | OH | 45424 |
| 4 | 5745 Old Troy Pike ("Troy Pike Store") | Huber Heights | OH | 45424 |

("Zam Store Locations").

4. Defendant Mohammed Rihan on behalf of Zam, LLC executed the Amended and Restated Dealer Agreement on or about November 18, 2010.

5. On or about January 1, 2011, Defendants Mohammed Rihan and Reham Abuhelal executed a Guaranty and Assumption of Obligations, in which they agreed to be personally bound by and liable for the compliance with all terms, covenants and conditions in the Dealer

---

[1] The Dealer Agreement is confidential and contains confidential and proprietary information regarding the business, technology, customers, finances, plans, proposals, and practices of Cricket. Cricket will move for leave to submit the dealer agreement under seal. Zam was provided a copy of the agreement at the time of execution.

Agreement and to pay Cricket its costs incurred in enforcing the agreement, including attorneys' fees of enforcement.

6. Pursuant to the Dealer Agreement, Zam submitted a credit application to Cricket.

7. Zam authorized Cricket, through its designated supplier, to initiate debit entries to Zam's checking account through the Automated Clearing House ("ACH") and provided checking account information for the designated account.

8. Following processing of the application, Cricket extended a credit line to Zam.

9. Zam used the credit line to purchase Cricket inventory.

10. The Dealer Agreement provides that Zam shall not divert Cricket customers during the term of the agreement and for six month following termination:

> During the term of this Agreement and for a period of six (6) months after termination of this Agreement (whether voluntary or involuntary, with or without cause), Dealer, its Principals, officers, directors, employees, agents and any successor entity to Dealer shall not at any time (i) request any Customer to curtail or cancel its business with Cricket, or (ii) otherwise solicit, divert or attempt to divert any such Customer from patronizing Cricket.

Dealer Agreement, ¶ 8(a).

11. Pursuant to the Dealer Agreement, Zam acknowledged that it received confidential and proprietary information of Cricket, including its customer lists, and agreed on behalf of itself, and its principals, officers, directors, employees, agents and successor entities, not to use or disclose Cricket's confidential and proprietary information during the term of the Agreement and for *three years* thereafter. Dealer Agreement, ¶¶ 8(b)-(c).

12. The Dealer Agreement contains a six-month non-compete period after termination or expiration of the agreement:

> Non-Compete Period After Termination. Dealer covenants and agrees that during the Term of this Agreement and for a period of at least *six (6) months* following any termination or expiration of this Agreement, Dealers shall not, and will cause

3

its owners, shareholders, members, officers, partners, and directors, ("Affiliated Persons") and any entity in which an Affiliated Person owns an interest ("Affiliated Entity"), not to directly or indirectly (including by licensing) engage or participate in, or acquire, manage, operate, control or participate in the management, operation or control of, either alone or jointly, any entity that engages in the sale, resale or distribution of any wireless telephone or wireless internet data service including, without limitation, any other wireless phone, or wireless internet service, or service plan that offers unlimited local and/or long distance calls and/or unlimited wireless internet service for a flat price, within a two (2) mile radius of Dealer's Cricket store locations. If Dealer breaches this covenant, then, in addition to any other legal or equitable remedy that Cricket may have, the post-termination period of this covenant will be extended for one (1) day for each day during which the Dealer's breach was ongoing.

Dealer Agreement, ¶ 8(g) (emphasis added).

13. Paragraph 9(g) of the Dealer Agreement contains a post-termination provision about Defendants' use of material bearing Cricket's mark and logo: "Upon termination of this Agreement, all exterior and interior Cricket signage, logos, displays and artwork, etc., are to be removed immediately from each Retail Location and Dealer shall immediately return all Cricket Provided Equipment."

14. Pursuant to the Dealer Agreement, "Cricket shall have the right and privilege to obtain, *without the necessity of posting bond therefore, and in addition to any other remedies that may be available*, equitable relief, including preliminary, temporary, and permanent injunctive relief, to cease or prevent any actual or threatened violation." Dealer Agreement, ¶ 8(i).

15. On November 21, 2013, Cricket discovered that Defendants were accepting Cricket payments, accessing Cricket systems, and activating Cricket phones at unauthorized locations.

16. On December 2, 2013, Cricket representatives spoke with Defendant Mohammed Rihan and provided notice that Zam was in violation of the Dealer Agreement and that as a result of the violations, Cricket would be terminating the agreement.

17. As of December 3, 2013, the balance on Zam's credit account was $81,817.72.

4

18. Between December 5, 2013 and December 10, 2013, Zam initiated four debit entries for payment on its credit account totaling $110,000:

| ZAM, LLC | 12/5/13 | $35,000 |
| --- | --- | --- |
| ZAM, LLC | 12/6/13 | $35,000 |
| ZAM, LLC | 12/6/13 | $10,000 |
| ZAM, LLC | 12/9/13 | $30,000 |
| | | $110,000 |

19. Each of the payments was rejected for insufficient funds. Prior to being rejected, the funds posted to Zam's credit account with Cricket thereby allowing it to use additional credit to purchase more Cricket merchandise.

20. During that period, Zam submitted orders for Cricket devices in the amount of $81,396.25.

21. Zam purchased the devices through its credit account.

22. Cricket, through its designated supplier, shipped the devices to Zam.

23. Cricket maintains a security interest in the devices acquired by Zam pursuant to Section 11(g) of the Dealer Agreement.

24. As of December 20, 2013, the total amount owing on Zam's credit account was $170,323.93.

25. Pursuant to Section 9(f) of the Dealer Agreement, Cricket exercised its right to repurchase the Cricket devices in Zam's inventory. On December 12, 2013, Cricket spoke with Defendant Mohammed Rihan and requested that Zam return the inventory.

26. On December 12, 2013, Cricket sent representatives to the Dixie Highway and Brandt Pike Stores to collect Cricket marketing materials and Cricket devices.

27. Store employees refused to return the devices and ordered the Cricket representatives to leave the store.

5

28. Based upon material violations of the Dealer Agreement, Cricket terminated the Dealer Agreement with Zam effective December 13, 2013 and confirmed its option to repurchase any unsold inventory.

### GETTYSBURG STORE.

29. As of December 21, 2013, the Gettysburg Store was open, displaying Cricket signage, and selling wireless products, plans, and services.

30. Cricket signage was displayed on the front and side of the store.

31. Cricket signage was also displayed on the street sign.

32. There was also a MetroPCS banner announcing that the store was "NOW OPEN."

33. At the front of the lot was black van with the Cricket logo.

34. Cricket and MetroPCS signs were displayed inside the store.

35. On the racks of the store were phone accessories with the Cricket logo.

36. Store employees were telling customers that all Cricket stores were going out of business and that MetroPCS provided better service, and offering Cricket customers incentives to switch to MetroPCS. Smith Decl. ¶¶ 11, 14.

### DIXIE HIGHWAY STORE

37. As of December 20, 2013, the Dixie Highway Store was open, displaying Cricket signage, and selling wireless products, plans, and services.

38. Cricket signage was displayed on the front of the store.

39. The store was also displaying a MetroPCS banner on the front of the store announcing that the store was "NOW OPEN."

40. Cricket and MetroPCS signs were being displayed inside the store.

41. On the racks of the store were phone accessories with the Cricket logo.

6

42. Store employees were telling customers that the store was changing to MetroPCS.

BRANDT PIKE STORE

43. As of December 21, 2013, the Brandt Pike Store was open, displaying Cricket signage, and selling wireless products, plans, and services.

44. Cricket signage was displayed on the front of the store.

45. On the racks of the store were phone accessories with the Cricket logo.

46. Store employees were distributing MetroPCS brochures and attempting to switch Cricket customers to MetroPCS.

TROY PIKE STORE

47. As of December 21, 2013, the Troy Pike Store was open, displaying Cricket signage, and selling wireless products, plans, and services.

48. Cricket signage was displayed on the front of the store.

49. There was a MetroPCS banner in the window announcing that the store was "NOW OPEN."

50. MetroPCS signs were displayed inside the store.

51. On the racks of the store were phone accessories with the Cricket logo.

52. The store is selling Cricket accessories with the Cricket logo.

53. Store employees were showing Cricket customers MetroPCS brochures and attempting to switch Cricket customers to MetroPCS.

DEFENDANTS' CONTINUED UNAUTHORIZED ACTIVITY.

54. Defendants owe $170,323.93 on their credit account and have failed to pay for wireless devices supplied by Cricket.

55. Defendants have refused to return the Cricket devices.

56. Defendants are disposing of the Cricket devices and misappropriating the proceeds from the sale of those devices for their own benefit.

57. Defendants are operating the Zam Store Locations as MetroPCS stores and are selling wireless products, plans, and services of MetroPCS.

58. Defendants continue to display Cricket signage.

59. Defendants are disparaging Cricket and attempting to divert Cricket customers to MetroPCS.

60. Defendants' actions constitute fraud and conversion of Cricket's property.

61. Defendants' actions constitute infringement upon Cricket's trademark and service mark in violation of Sections 32(1) and 43(a) of the Lanham Act of 1946, as amended ("Lanham Act"), 15 U.S.C. §§ 1114(1) and 1125(a).

62. Defendants' actions constitute violations of the Dealer Agreement, including the non-compete provision, the non-diversion provision, the confidentiality provision, the sign removal provision, and the device buy back provision of the Dealer Agreement.

63. Cricket will suffer substantial and irreparable harm as a result of Defendants' actions, for which no adequate remedy at law exists.

64. There is a strong likelihood that Cricket will prevail on the merits. Between December 5, 2013 and December 10, 2013, Defendants initiated debit entries on their credit account with Cricket totaling $110,000, knowing that they had insufficient funds and with the intent to defraud Cricket. Before the payments were declined by Zam's bank for insufficient funds, Defendants ordered and received Cricket devices in the amount of $81,396.25. In furtherance of their scheme to defraud Cricket, Defendants are selling the wrongfully obtained Cricket devices and misappropriating the proceeds for their own benefit.

65. Defendants are infringing upon Cricket's marks and logos by displaying Cricket signage after termination of the Dealer agreement in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

66. Defendants are violating the Dealer Agreement, including the non-compete provision and non-diversion provision, by operating the Zam Store Locations as MetroPCS stores and selling wireless products, plans, and services of MetroPCS. Defendants are disparaging Cricket and attempting to divert Cricket customers to MetroPCS.

67. Cricket has a legitimate business interest in protecting and maintaining its customers. Cricket has spent millions of dollars per year advertising and promoting its goods and services under the CRICKET mark in a variety of media. Further, during the term of the Dealer Agreement, Defendants and their employees served as the face of Cricket to its customers: selling Cricket products, performing customer service, and accessing Cricket systems. Cricket's customers do not have long-term contracts. As a result, Cricket customers visit Cricket stores to pay their monthly bills and to renew their service for the next month. Every customer has the option at the end of the month to renew with Cricket or to cancel service. When Cricket customers visit their usual store locations to renew their monthly service, which are displaying Cricket signage, and the stores offer the customers competing plans and incentives to cancel their service with Cricket, it is likely that Cricket will suffer harm to its reputation and that a substantial number of customers will cancel their service.

68. Unless Defendants are enjoined from continuing their unauthorized activities, Cricket will continue to suffer immediate, substantial, and irreparable harm—loss of property, harm to its business reputation, goodwill, lost sales and profits, and the continued diversion of its customers at the Zam Store Locations to a competing carrier's services and products.

9

69. The threat of irreparable harm to Cricket outweighs any harm Defendants might suffer if injunctive relief is granted. Defendants will not be harmed by being compelled to comply with the Dealer Agreement or refrain from disposing of Cricket devices obtained by fraud. Cricket seeks to prevent what Defendants have no legal right to do, i.e., to dispose of the wrongfully obtained Cricket devices, to infringe upon Cricket's mark, and to violate the Dealer Agreement by diverting Cricket customers to other wireless carriers and competing with Cricket within the six months after termination and within a two-mile radius of any of the Zam Store Locations.

70. The public interest weighs in favor of injunctive relief. An injunction order in this action will serve to advance the important public interest in favor of freely negotiated business contracts freely and protecting companies from unfair competition.

Based upon the forgoing, the Court hereby ORDERS as follows:

1. Cricket's Motion for Temporary Restraining Order is GRANTED.

2. Defendants Zam, LLC, Mohammed A. Rihan, and Reham Abuhelal; their Affiliated Persons and Affiliated Entities; their principals, officers, directors, employees, agents, successor entities; and all persons acting in concert or in active participation with them are hereby ENJOINED from directly or indirectly, engaging or participating in, or acquiring, managing, operating, controlling or participating in the management, operation or control of any entity that engages in the business of the sale, resale, or distribution of any wireless telephone or wireless internet data service (including, without limitation, any other wireless phone, or wireless internet service, or service plan that offers unlimited local and/or long distance calls and/or unlimited wireless internet service for a flat price) in violation of the Dealer Agreement.

3. Defendants Zam, LLC, Mohammed A. Rihan, and Reham Abuhelal; their Affiliated Persons and Affiliated Entities; their principals, officers, directors, employees, agents, successor entities; and all persons acting in concert or in active participation with them are hereby ENJOINED:

(i) from selling or otherwise disposing of the Cricket devices or accessories in Defendants' possession;

(ii) from disposing of or misappropriating proceeds from the sale of the Cricket devices or accessories;

(iii) from using the CRICKET mark, the CRICKET logo, or any confusingly similar marks in any way or using any word, words, phrases, symbols, logos, or any combination of words or symbol that would create a likelihood of confusion, mistake, or deception therewith, in connection with or in the marketing, offering, selling, licensing, displaying, advertising, or developing of Defendants' products and/or services;

(iv) from infringing the CRICKET mark and logo and/or engaging in further such unlawful acts and from reaping any additional commercial advantage from their misappropriation of the rights of Cricket in the CRICKET mark and logo and the registrations of these marks;

(v) from violating the non-compete provisions in the Zam Dealer Agreement for a period of at least six months from the date of the entry of the initial injunction order and within a two mile radius of Zam Store Locations;

(vi) from violating the confidentiality provision in the Zam Dealer Agreement for a period of three years from the date of termination; and

(vii) from violating the non-diversion provision in the Zam Dealer Agreement for a period of six months from the date of termination.

4. This Preliminary Injunction applies to all of the Zam Store Locations, including:

| 1 | 1744 N. Gettysburg Ave. | Dayton | OH | 45417 |
| 2 | 3980 S. Dixie Hwy. | Dayton | OH | 45439 |
| 3 | 5001 Brandt Pike | Dayton | OH | 45424 |
| 4 | 5745 Old Troy Pike | Huber Heights | OH | 45424 |

5. Pursuant to Section 8(i) of the Dealer Agreement, Cricket is not required to post a bond, pending further order of the Court.

6. The Court sets a hearing on Cricket's request for a preliminary injunction on Jan. 3, 2014 at 9:30 a.m.

7. The Court's automatic stay of discovery is lifted, and the parties are hereby granted leave to conduct expedited discovery as necessary for the hearing on the motion for preliminary injunction.

ENTERED: This 23 day of December, 2013 at 4:00 p.m.

_____
Judge, United States District Court